JESSE LOWE ET AL., APPELLANTS, V. PROSPECT HILL CEME-
TERY ASSOCIATION ET AL., APPELLEES.*

FILED DECEMBER 6, 1905.     No. 14,188.

1. **Courts: INJUNCTION: VACATION.** The district court, in the exercise of its general equity powers, is authorized and possesses jurisdiction to modify or vacate an order for a perpetual injunction, which it has allowed, after the term at which rendered, and at any time when the cause upon which it was granted has been removed and the danger of invading the rights of the plaintiff no longer exists.

1a. ———: **EQUITY POWERS.** The exercise of such jurisdiction does not rest on the statutory provisions for modifying or vacating judgments or final orders in the same court after the term at which such judgment or final order was rendered.

2. **Procedure.** Where facts have arisen since a final order was entered allowing a perpetual injunction, of such a nature that it is clear the decree ought not to be executed, relief against it may be given in a summary proceeding on motion to modify or vacate the same, provided the facts are undisputed.

2a. ———: **QUÆRE.** Whether proceedings of a summary character are permissible for such purpose or whether more formal proceedings are not required, when there is a substantial controversy regarding the facts on which the proposed action is to be predicated, *quære.*

* Rehearing allowed.   See opinion, p. 100, *post.*

3. **Judgment: RES JUDICATA.** A judgment on the merits in the trial of a civil action constitutes an effective bar and estoppel in a subsequent action upon the same claim or demand, not only as to every matter offered and received to sustain or defeat the claim or demand, but also as to any other admissible matter which might have been offered for such purpose.

3a. **Law of Case.** When a question in controversy has been once finally decided, it becomes the law of the case, and is binding on the parties and those claiming under or through them in all subsequent stages of the litigation.

4. **Cemetery: INJUNCTION: ACTION OF CITY COUNCIL.** Where, in an action in which the object is to enjoin the defendant from using a certain tract of land for the interment of dead bodies, one of the vital issues is whether such land is a part of an established cemetery, and it is in such action determined that it is not, a resolution afterwards passed by the city council of the city in which such grounds are situated to the effect that such disputed ground is a part of the cemetery, and is not therefore taxable, will not affect the question as litigated and determined, and will afford no sufficient basis for a modification or vacation of an order for a perpetual injunction restraining the defendants from the use of such ground for burial purposes.

5. **Evidence examined,** and it is found that there has been no material change since the entry of the final order allowing a perpetual injunction in respect of the wells on the premises of the plaintiffs, and the threatened dangers to them because of the pollution of the underground waters from which such wells are supplied by reason of the decomposition of dead bodies, if interred in the tract of land involved in the controversy, and that no such change has arisen since the rendition of the original decree in the action in respect of such matters as would justify the modification or vacation of the order of injunction therein allowed.

6. **Res Judicata.** A question tried and determined in an action in which a perpetual injunction is allowed cannot be relitigated on a motion to modify or vacate the order allowing such injunction.

7. **Cemetery: INJUNCTION: CITY ORDINANCE.** The cause upon which the order allowing a perpetual injunction against the use of a tract of land for burial purposes is not removed, and the threatened invasion of the plaintiff's rights is not obviated, by an ordinance of the city within which such tract of land is located, which authorizes the health commissioner in his discretion to provide rules and grant permits for the burial of dead bodies in a different manner than that ordinarily obtaining, by

covering the bottom and walls of the grave with a coat of mortar, so as to render the same impervious to the fluids arising from the decomposition of dead bodies.

7a. Injunction: VACATION: BURDEN OF PROOF. Where a defendant seeks the vacation of a perpetual injunction allowed after a trial in a civil action, the burden is on him to show that the threatened injury has been certainly overcome, not that it possibly may be.

APPEAL from the district court for Douglas county: WILLIS G. SEARS, JUDGE. *Reversed and dismissed.*

*Francis A. Brogan,* for appellants.

*C. A. Baldwin, G. W. Doane* and *E. Wakeley,* contra.

HOLCOMB, C. J.

By a proceeding summary in character, on motion, the defendant association has applied for a modification or vacation of a final order of the district court for Douglas county rendered April 2, 1896, granting a perpetual injunction restraining the defendants from using a certain strip of land adjacent to Prospect Hill cemetery in Omaha, for the purposes of burial of the dead. On appeal to this court from the order of the district court allowing a perpetual injunction in the original action, the decree complained of was affirmed. *Lowe v. Prospect Hill Cemetery Ass'n,* 58 Neb. 94. Upon the filing of the motion to modify or vacate the order for a permanent injunction, theretofore granted, a notice or citation to show cause why the same should not be granted was issued and served on the attorney of record appearing for the plaintiffs in the original action, who appeared specially and objected to the jurisdiction of the court over the subject matter, and to its authority in such a proceeding to modify or vacate the order entered long prior thereto and after many subsequent terms had intervened, contrary to the provisions of sections 602 *et seq.* of the code. These objections were overruled; whereupon the plaintiff filed formal objections to the granting of the mo-

tion, and traversing many of the averments of fact found therein. Upon the issue thus formed, affidavits were filed and, after a hearing to the court upon the motion and the objections thereto and the affidavits filed by the respective parties, the court sustained the motion and entered an order vacating the injunction, theretofore allowed, and denying to the plaintiffs any relief whatever. The plaintiffs appeal.

A very full and substantially accurate statement of the case, with a plat of the grounds involved in the controversy, will be found in the opinion cited, *Lowe v. Prospect Hill Cemetery Ass'n, supra*, and need not here be restated. The defendants, by their motion, seek to be relieved from the effect of the order granting a perpetual injunction upon the following grounds, the substance of which only is herein stated: (1) That when the decree was rendered, the ground in controversy was found by the court to be no part of the first addition to Prospect Hill cemetery, and that to use such ground for burial purposes would have been in violation of one of the ordinances of the city preventing the establishment of cemeteries within the city limits, or of enlarging those already established. It is asserted in the motion that at the present time said ground is a part of Prospect Hill cemetery, has been so recognized by the city council, and that it would not now be a violation of city ordinances to use said ground for burial purposes. (2) The motion also sets forth that at the time of the rendition of the decree the plaintiffs had wells upon their premises, which, because of the probaility of pollution of the underground waters by reason of the decomposition of dead bodies, would be a menace to the health of those using such wells; and that now there is no well on said premises subject to pollution by reason of the burial of dead bodies in said ground. (3) It is further claimed that the soil in which the interments were to be made was at that time found by the court to be such as to permit the percolation of water through said ground and into the wells of the plain-

tiff, thereby endangering the health of those using the same; and that at the present time the ground is dry, compact, hard clay, and that the contour of the surface is such that it contains no water which can percolate through it. (4) The last of the grounds upon which the modification or vacation is asked is that, when the decree was rendered, there were no rules and regulations regarding the burial of the dead in such manner as to prevent the occurrence of any evil effects therefrom, but that since said time provisions have been made by ordinance for the creation of a tribunal to which is given power, and which is charged with the duty, of making all needful rules and regulations governing the burial of the dead as shall be required to fully protect the inhabitants of the city of Omaha, and all of them, from any and all evil effects that can arise from any burials made in any cemetery in the city.

1. The first contention of the plaintiffs, appellants here, is to the effect that the proceedings resorted to by the defendants and the order therein by the court in its vacation of the original decree are unauthorized; that the court was without power to vacate or modify its final decree at any succeeding term, except in the manner and for causes pointed out in the statutes. The question presented is an interesting one, but the objection is not, in our opinion, as grave as is contended for. The order allowing a permanent injunction which the court grants is in the exercise of its powers as a court of equity. Its allowance is predicated on the fundamental idea that the aggrieved party is without an adequate remedy at law. The constitution has clothed the district courts with the exercise of the equity powers possessed by the courts of chancery of England. These powers cannot be abridged by statute. Indeed, it has been frequently decided in this jurisdiction that the statutory methods for granting new trials, vacating and modifying judgments, decrees and final orders rendered at a prior term, do not deprive the courts of the right to exercise their general equity powers

for the relief of those whose cases do not come within the provisions of the statute. We perceive no good reason why this same right should not be exercised where a final order granting a perpetual injunction, because of the occurence of facts and conditions since its rendition, has become of no use or benefit to the one whose rights were thus protected or where it would be inequitable and against good conscience to longer enforce it. The power of the court to enforce and make effective its orders of injunction, and to punish as for contempt their violation, continues for all time. As a correlative there must also exist the power to refuse to punish for the violation of the orders, and to modify or vacate, as exigencies arising since their rendition may require. "The remedy sought was purely preventive; and, in such cases, it is perfectly well settled that a court of equity will not continue or make perpetual an injunction, after the cause upon which it was granted has been removed, and the danger of invading the rights of the plaintiff no longer exists." *Wiswell v. First Congregational Church*, 14 Ohio St. 31, 42. The injunction in this case is purely preventive. It restrains the defendants from doing the prohibited acts and nothing more. It prevents a threatened injury to, and incroachment of, the rights of the plaintiffs. It is not of the nature of a decree or judgment which, when executed, has served its purpose. Its force and effect continue so long as it shall remain without modification and unvacated. Those against whom it operates can only be relieved from its binding and enforceable character by the court granting the injunction. *Muller v. Henry*, 5 Sawyer (U. S. C. C.), 464. We are satisfied that, where a final decree has been rendered allowing a permanent injunction, as in this case, the court granting it possesses the undoubted power to either vacate or modify when the circumstances and situation of the parties have so changed as to render such action just and equitable, and this even though the statute may not have specifically provided for the exercise of such power. The

difficult question, in our view, is not as to the existence of the power, but as to how its exercise shall be called into action and the method of procedure with reference thereto.

2. It is objected, further, by the plaintiffs that the summary proceeding resorted to in the case at bar, whereby it is sought to have the question involved determined on motion supported by affidavits and opposed by counter-affidavits, is unauthorized and insufficient to support a final order or decree vacating and annulling the final order, theretofore entered, allowing the perpetual injunction. Whether or not, when there is a substantial controversy regarding the facts as to the right of a party to have an injunction modified or vacated, it is not required that more formal pleadings be had, the parties brought into court in the ordinary way as in an original action, and the issues of law and fact regularly made up, is not free from doubt. In *Wetmore v. Law,* 34 Barb. (N. Y.) 515, it is held that, where facts have arisen since a judgment was entered of such a nature that it is clear the judgment ought not to be executed, relief against the judgment may be given upon a motion to vacate the same, provided the facts are undisputed. In the opinion it is said:

"The first objection taken to the motion is that relief cannot be granted in this summary way against a solemn judgment of the court; that resort should be had to the writ of *audita querela,* and a formal issue made between the parties to test the truth of the matters alleged, and their legal bearing upon the judgment. I think the modern practice authorizes a resort to this motion, especially if the facts are undisputed. *Baker v. Judges of Ulster,* 4 John. (N. Y.) *191; *Davis v. Sturtevant,* 4 Duer (N. Y.), 148; *Clark v. Rowling,* 3 Comst. (N. Y.) 216, 221, 222, 226, 227. It has been frequently applied for the benefit of a party who has obtained a bankrupt's discharge, and who has had no opportunity, before judgment, to avail himself of that defense. *Lister v. Mundell,* 1 B. & P. (Eng.) 427; *Baker v. Judges of Ulster,* 4 John.;

(N. Y.) 191; *Thompson v. Hewitt,* 6 Hill (N. Y.), 254; *Clark v. Rowling,* 3 Comst. (N. Y.) 216, 226. And if it be clear upon the facts presented, which are usually, perhaps always, facts arising after judgment, or after the time has passed, before judgment, in which the party can avail himself of them in the action—if it be clear that the new matter is of such a nature that the judgment ought not to be executed—then resort may be had to this summary proceeding, or the party may, at his peril, take the risk of disobeying the positive directions of this court, contained in the judgment itself." See, also, *Pennsylvania v. Wheeling & Belmont Bridge Co.,* 18 How. (U. S.) 421.

The reasoning in the authority quoted from is adopted and followed in a later case in Minnesota, where precisely the same question arose. *Weaver v. Mississippi and Rum River Boom Co.,* 30 Minn. 477. Whether the controversy of fact arising in the case at bar takes it without the rule announced in the foregoing authorities, we need not here determine. This question goes to the form of procedure rather than the substance of the controversy. This case is here on appeal for a trial *de novo* on the record as presented, and not upon error for the correction of irregularities in the trial of the action in the court below. We may, for the present and in this case, waive the question of the method of procedure and address ourselves to an inquiry as to whether, on the merits of the controversy, the defendants are entitled to be relieved of the decree, which has become final, enjoining them from making use of the ground involved in the controversy for purposes of sepulture.

3. It is argued by the plaintiffs that the motion to modify or vacate filed by the defendants is an attempt to obtain a rehearing in the original cause and relitigate the questions therein determined. To this, counsel for defendants say that they make no attack on the original decree; that they accept the results of the litigation as determined by the decree in good faith and ask

only for relief because of changed conditions and circumstances arising since the rendition of that decree. We accept counsel's word regarding this phase of the case, and shall, as it is our duty to do, treat all matters and questions therein litigated as binding on both parties and as concluding their respective rights in reference thereto.

The rule is well settled that a judgment on the merits in the trial of a civil action constitutes an effective bar and estoppel in a subsequent action upon the same claim or demand, not only as to every matter offered and received to sustain or defeat the claim or demand, but also as to any other admissible matter which might have been offered for such purpose. *Slater v. Skirving,* 51 Neb. 108. When a question in controversy has been once squarely decided, the decision, if acquiesced in or if not recalled, becomes the law of the case, and is binding upon the parties and those claiming through or under them in all subsequent stages of the litigation. *Smith v. Neufeld,* 61 Neb. 699. In *Fayerweather v. Ritch,* 34 C. C. A. 61, a case where the principle of *res judicata* was applied to a question which renders it quite in point, it is said:

"By whatever process of reasoning the result was reached, it is plain that by the judgment of the state court it has been determined that the fund now in controversy equitably vested in the various corporations made legatees by the ninth clause of the will, and did not, as any part of it, belong to the complainants; and that determination was reached in an action, between the same parties now present, brought to settle the ultimate rights of each to the fund. As the present suit is brought to determine the rights of the same parties to the same fund, we are unable to doubt that the former judgment is an estoppel and a finality, not only as to every matter which was offered and received to sustain or defeat the respective claims of the parties to the fund, but also as to any other admissible matter which might have been offered for that purpose. It suffices to refer to *Cromwell v. County of*

*Sac,* 94 U. S. 351, as a complete exposition of the doctrine of estoppel, so far as pertinent to the present case."

We need not further pursue the inquiry into this branch of the case. It is obvious that the defendants are in these subsequent proceedings concluded by the original decree as to all matters urged as a defense in that action, as well any defense which might have been presented to defeat the plaintiff's demand for a permanent injunction restraining the defendants from doing the things therein prohibited. From the consequence of that decree, as to all such matters, neither of the parties can now escape. Our present consideration of the case is limited to an inquiry as to whether, because of subsequent changes in the situation of the parties and of facts since arising creating different conditions, the defendants ought in equity to be relieved from the force and effect of a just and valid decree entered against them.

4. The first ground of the motion to modify or vacate proceeds upon the theory that, while it was determined in the original action that the tract of land involved in the controversy was not a part of Prospect Hill cemetery, or the first addition thereto, it has, since the entry of the decree, become a part and parcel of the already established cemetery, so recognized by the authorities of the city of Omaha, and that, for such reason, the injunction ought not now to operate against this particular tract in dispute, no more than it ought to against the burial of the dead in the cemetery as then established. It is very evident that one of the vital issues tried and determined in the original action was whether the disputed tract was a part of the established cemtery grounds. In plaintiffs' petition, after describing what is mentioned as the cemetery grounds proper, it is alleged "that the southern boundary of the said cemetery proper lies more than 200 feet north of the lands belonging to the plaintiffs, as above described, and lies 127 feet north of the north line of Parker street, aforesaid"; and again, "but the plaintiffs say that the tract so occupied by them (defendants), as

aforesaid, included only that portion above described as Prospect Hill cemetery proper, and the tract inclosed by them for the purpose aforesaid included no other ground than the said cemetery proper." By these and other allegations it was positively averred that the tract involved in this controversy was no part of the established cemetery, known as Prospect Hill cemetery, nor of the first addition thereto, and that it was proposed to extend and enlarge the cemetery, as then established, so as to include the disputed strip. In the answer it is said: "Defendant says it is not true and it denies that the limits of Prospect Hill cemetery is now, or ever was, as set forth in plaintiffs' petition; * * * that it is not true that the southern boundary of Prospect Hill cemetery is now, or ever was, 127 feet, more or less, from the northern line of Parker street." It at once becomes manifest that the very groundwork of the original action was with reference to the question of whether the disputed tract was or was not a part of the Prospect Hill cemetery as then existing. There was no claim or contention on plaintiffs' part concerning an injunction against the burial of the dead in the cemetery then established. What was contended for was that, by the proposed enlargement of the existing cemetery by adding to and including therein the ground designated as "the disputed strip," a private nuisance would be created endangering the life and health of the plaintiffs, which would be an unlawful invasion of their property rights. Whether "the disputed strip" was or was not a part of the cemetery proper was of necessity involved in the decision rendered, and indisputably establishes the fact that it was no part of the then existing cemetery. The ordinances of the city then as now declare it unlawful "to enlarge, add to or increase the limits or boundaries of any cemetery space, ground, or burial place for the dead, not laid out, prepared, or set aside and intended for such purposes." It is true that, since the rendition of the original decree, the city council has, by resolution, declared the tract in dispute to have been cemetery grounds

and intended for burial purposes, and therefore exempt from taxation, and instructed the tax commissioner accordingly. Can this resolution have the effect of nullifying the solemn adjudication of a court of competent jurisdiction to the contrary? We think not. Nor can it be said to be such a change in the situation, surroundings or circumstances connected with the transaction as that the injunction ought, for that reason, to be vacated. The ordinance prohibiting the enlargement of any existing cemetery is still in force. The material findings and the adjudication in the trial of the original action to the effect that the plaintiffs' rights would be invaded, if the disputed tract were used for burial purposes, are in no way affected or lessened by the resolution of which mention has been made. So far as the parties to this suit are concerned, the question of the relation of the disputed tract to the cemetery proper has been adjudicated against the contention of the defendants, and, however so much the city council may resolve to the contrary, it cannot change the legal status of the parties in respect thereto.

5. It is next contended that the situation of the parties to the controversy in respect of the wells subject to pollution from the percolation of water through the soil has materially changed. Unfortunately for the defendants, there exists no reasonable doubt on the proposition that in this respect the situation is almost, if not quite, identical with what it was when the decree was entered. We observe no difference whatever. The same wells are there now as they were during the trial of the original action, and the same use is being made of them. In fact there does not appear to be but one well in use on the plaintiffs' property and one not in use. There are many other wells in the immediate vicinity. Accepting, as we do and as counsel say they do, the former adjudication as a finality on this question, there is left no room for substantial controversy regarding the situation of the parties now and as they were when the original decree was entered, and it must follow that there is no basis in law, nor in equity,

for a modification or vacation of the decree in regard to the matters just mentioned. The decision rendered on the former appeal has been much criticised because it is remarked that the wells of the plaintiffs would probably become polluted from waters percolating through the ground in the event human remains were interred in the tract of land involved in the controversy, when, in fact, as is claimed, there are no wells on the lands of the plaintiffs that can possibly be injured from this source. It may be remarked, in passing, that the opinion as we interpret it decides, in substance, that the plaintiff's lands were in the residential district in the city of Omaha, and in a locality where those living thereon must rely for their supply of water upon wells dug for that purpose; that the underground waters from which the wells were supplied would, in all reasonable probability, from the evidence in the case, become infected with bacteria from the decomposed bodies of those dying with contagious and infectious diseases, thereby rendering such waters unfit for human consumption, and menacing the health and life of those using the same; that the proposed cemetery would constitute a private nuisance, and would, if permitted to be used as such, wrongfully encroach upon the rights of the plaintiffs and prevent them from enjoying the reasonable and comfortable use of their property, be a menace to health, and render the locality unsuitable for residences, for which purposes only it was adapted. The same reason which impelled the city by ordinance to make it unlawful to enlarge existing cemeteries or establish new ones in the corporate limits, to wit, regard for the comfort, health and life of its citizens, guided the court in the enforcement of those principles which insure to the citizens protection from the actions and conduct of others calculated to prevent their enjoyment of these same blessings.

6. It is further contended that the condition of the soil has materially changed from the condition it was in at the time of the original decree as found by this court in the opinion cited. There is no merit whatever in this con-

tention and, at best, it deserves only a passing notice. The condition has in nowise changed. Some additional evidence of a cumulative character in the form of affidavits was introduced at the last hearing. The evidence taken at the former trial was also introduced on the last hearing. We cannot possibly consider this matter without retrying the question heretofore litigated and adjudicated, and this we decline to do.

7. Lastly, it is contended that, because of the adoption of an ordinance, having for its object the promotion of the health of the citizens of Omaha, and in which there is conferred on certain officers authority to regulate the manner of the burial of the dead, the order allowing a permanent injunction should be modified or vacated. To this it may be said, first, that there is an ordinance in existence prohibiting the enlargement of an existing cemetery; second, that it has been determined, as we have seen, that the use of the "disputed strip" would be an enlargement of an existing cemetery in violation of such ordinance; and, third, the ordinance referred to does not profess to provide with certainty any regulation as to the manner in which dead bodies shall be interred, and that, so far as the ordinance goes, the interments may be made in the ordinary method and as it was contemplated they would be when the perpetual injunction was allowed; and, fourth, it is by the ordinance left discretionary with the commissioner of health whether he will or will not adopt a different method than is ordinarily resorted to, and by his affidavit introduced in evidence he says he has no intention of doing so. The ordinance reads: "The commissioner of health, when, by reason of the locality in the cemetery where the burial is to be made, he may deem it necessary or advisable for the preservation of the health of the inhabitants of the city, may require, and so direct in the permit issued by him for the burial of said body, that the bottom of the grave and the walls thereof extending above the casket containing the body shall be covered with a coat of mortar made of sand and cement, so as

to render the bottom and walls of said grave impervious to the fluids arising from the decomposition of the dead body." Whether the method proposed, even if adopted, would obviate the threatened danger found to exist, or would aggravate the same, we are left entirely in the dark. Of course the burden would be on the defendants to show that the threatened injury had been certainly overcome, not that it possibly might be. To vacate the injunction on this ground would be to remand the plaintiffs for any relief they are entitled to to the commissioner of health. It would be for the court to abdicate some of its functions in favor of that officer, and to leave the matter wholly to his discretion. If he sees fit to omit the requirement contemplated by the ordinance, it cannot be doubted that he is at liberty to do so, in which event the plaintiffs would be altogether without a remedy, notwithstanding it has been adjudicated that they are entitled to relief. The ordinance does not meet the requirement, even conceding it to be proper and effectual, which we do not now stop to inquire, in that the reasons which impelled the allowance of the injunction are as strong as when granted, and it wholly fails to show that the objections to the use of the disputed ground for burial purposes are overcome or obviated thereby. The most that can be said of the ordinance is that it is an exercise of the police power which the city has always possessed, and that the exercise of such powers and the adoption of ordinances in pursuance thereof would not deprive the courts of their inherent power to protect property rights by granting injunctions against maintaining nuisances, and of enforcing the same. This same question was in a measure considered in the former opinion. The adoption of the ordinance does not materially change the situation. Whether the ordinance existed at the time of the trial, or has since been adopted, it would not have prevented the granting of the injunction in the first place, nor would its adoption afterwards be sufficient ground upon which to base a vacation of the order after it had once been rightfully

entered. The learned judge hearing the application to vacate the decree in the court below found that the matters heretofore discussed, arising in the manner stated, constituted sufficient grounds, and showed such changes in the situation of the parties and of the conditions surrounding the land involved in the controversy as to justify the vacation of the permanent order of injunction. We are, for the reasons heretofore given, unable to coincide with the conclusions reached in the trial court. It follows that the order vacating the decree making the injunction perpetual must be reversed and this proceeding dismissed, and it is accordingly so ordered.

REVERSED.

The following opinion on rehearing was filed September 21, 1906. *Judgment of reversal adhered to:*

LETTON, J.

A statement of the facts in this case may be found in the opinion upon the original decree, *Lowe v. Prospect Hill Cemetery Ass'n,* 58 Neb. 94, and in the opinion upon the application to modify the injunction, *Lowe v. Prospect Hill Cemetery Ass'n, ante,* p. 85.

The original injunction was granted upon two grounds: (1) That interments in the disputed strip of land would pollute and poison the water in the wells of the plaintiffs; that by such interment the health and lives of the inhabitants of the locality would be endangered, the use and enjoyment of the plaintiffs' property interfered with and their real estate rendered valueless, and that such use would constitute a private nuisance at common law. (2) That the use of the land for interring therein dead bodies would violate the ordinances of the city of Omaha. While counsel for the defendants insist that it is impossible to tell from the decree upon what ground the injunction was granted, it appears that the defendants were enjoined from in any manner establishing a cemetery on the disputed strip and from enlarging the limits of Prospect

Hill cemetery so as to include the said disputed strip, or any part thereof; also, from causing any burials to be made, and from selling or using any portion of said strip for the purpose of interring human remains or for the purpose of sepulture. It is clear that such a decree is based not alone upon the existence of a private nuisance, but upon the fact that the disputed strip was not at that time cemetery ground, and that the city ordinance prohibited the establishment of new cemeteries or the enlargement of old ones within the city limits.

At the first hearing of the case in this court upon appeal (*Lowe v. Prospect Hill Cemetery Ass'n,* 58 Neb. 94), it was said by RAGAN, C.:

"We have carefully studied both the history and the argument, and have not the slightest doubt that the ordinances of the city of Omaha forbid the cemetery association from interring dead bodies in the strip of land in controversy, and, without determining whether the appellees made such a showing as would entitle them to this injunction because the interring of dead bodies in the land by the cemetery association would violate the ordinances of the city of Omaha, we proceed to inquire whether the decree of the district court can be sustained upon the ground that the use proposed to be made by the cemetery association of its ground would constitute a private nuisance at common law."

The remainder of the opinion of Mr. Commissioner RAGAN is mainly devoted to a consideration of this question, and the question as to the prohibition of interment therein by ordinance is not further considered.

Since the rendition of the original decree the city council has declared the disputed tract to be cemetery grounds, and thus, in effect, attempted to set aside an adjudication by a court of competent jurisdiction to the contrary. Upon renewed consideration of the facts and the law upon this branch of the case, we are fully satisfied that the action of the city council could in nowise affect the legal status of the parties, and on this point we ad-

here to the reasoning and conclusion of the former opinion by Chief Justice Holcomb.

It is contended by the defendants that sufficient change has been shown in the conditions and circumstances of the case to justify a modification of the injunction, among other things, by the adoption of a health ordinance by the city council of Omaha, in which the regulation of the manner of the burial of the dead so as to prevent the dangers of pollution of waters or spread of disease is placed within the power of the commissioner of health; but at the time of the passage of the health ordinance granting such powers the ordinance prohibiting the enlargement of cemeteries or the interment of dead bodies therein was still in full force and effect. As is pointed out by Chief Justice Holcomb, the ordinance relied upon does not repeal the ordinance prohibiting burial within the tract. It consequently could have no effect as to the premises in dispute, and, as is shown in the former opinion, the adoption of the ordinance does not materially change the situation. After consideration of all the evidence we are in accord with the finding of the district court, and the conclusion arrived at by Mr. Commissioner Ragan and Chief Justice Holcomb, that the fact is established by a preponderance of the evidence that the disputed strip was no part of the then existing cemetery at the time of the passage of the ordinance prohibiting the enlargement of cemeteries within the city. We think no other change of circumstances of any effective character has been shown to have taken place.

It is urged by the defendants that, conceding that the preservation of the plaintiffs' right to be protected from the evils caused by interment in the disputed tract may not properly be preserved by the provisions of the health ordinance of the city of Omaha granting power to the health commissioner to prescribe rules for interment, still, the cause should be remanded to the district court, with directions to allow further pleadings and proofs, if necessary, to ascertain whether or not such restrictions and

regulations of the right of sepulture can be made so as to prevent injury to the plaintiffs, and, if it be found that the rights of the plaintiffs may be protected by proper regulations, then that the court modify the injunction so as to allow burials to be made under regulations and conditions prescribed in its decree.   Were it not for the existence of the ordinance forbidding interments, this request would be seriously considered by the court, but to modify the decree so as to permit or authorize or countenance such interment upon the premises would be in plain conflict with the provisions of the ordinance and would put the court in the position of at least impliedly sanctioning a violation of law.   While it is possible that the plaintiffs, without the existence of some special injury to them different from that to the public at large, might not have been entitled to an injunction in the first place merely upon the ground that the defendants proposed to violate, or were violating, ordinances of the city, still both elements were pleaded, found to have been proved, and entered into the decree, viz., the existence of an ordinance making it unlawful to perform the prohibited acts, and the existence of the right on the part of the plaintiffs to insist upon obedience to the ordinance by the defendants on account of special injury to their property.

While we appreciate the sentiment which has moved the distinguished and venerable counsel for the defendants to persevere in the great labor they have performed in this case, and while we would be gratified to grant them the relief sought, we are of the opinion that the conclusion reached in the former opinion is right and should be adhered to.

REVERSED.