378 P.2d 745

**GILLESPIE LAND AND IRRIGATION COMPANY, a corporation, and Gila River Ranch, Inc., a corporation, Appellants,**

v.

**S. L. NARRAMORE and Alice Narramore, husband and wife, W. O. Narramore and Eliza Narramore, husband and wife, and Carroll W. Davis and Kathryn B. Davis, husband and wife, Appellees.**

No. 6738.

Supreme Court of Arizona,

En Banc.

Feb. 13, 1963.

Rehearing Denied March 19, 1963.

Snell & Wilmer, Phoenix, for appellants.

Laney & Laney, Phoenix, for appellees Narramore.

Moeur & Jones, Phoenix, for appellees Davis.

MAHONEY, Judge.

The appellants, Gila River Ranch, Inc. and Gillespie Land and Irrigation Company, appeal to this Court from a supplemental decree, entered against them in the court below which in effect denies a modification of former decrees entered in 1922 and 1925. The present controversy is essentially between the appellees Narramore and appellant Gila River Ranch, Inc., successor to the Gillespie Land and Irrigation Company, predicated on these facts:

Prior to the year 1913 the Gila Land & Cattle Company, predecessor of the Narramores, and the Enterprise Ranch, by its predecessor, perfected water rights in the Gila River at a point upstream from the Town of Gila Bend. Subsequent and junior thereto Gila Water Company, predecessor of Gillespie Land and Irrigation Company and the Gila River Ranch, Inc. perfected its appropriation. Appellants' appropriation was accomplished by means of a dam built across the river upstream from the diversion points of both the Narramores and Enterprise Ranch. This dam, known as Gillespie Dam, was designed to, and effectively did, cut off the surface flow of the stream other than at flood times.

The Gila Land & Cattle Company filed a suit against the Gila Water Company to quiet title to their prior right to twelve cubic feet of water per second and for injunctive relief because of the destruction of the surface flow. The portion of the decree in that suit rendered in 1922 pertinent to this decision is as follows:

"That the defendant, its officers, agents and employees, and all other persons claiming to act under and by authority of defendant, be enjoined from diverting by means of defendant's said dam and canal the normal flow of said Gila River at such times and in such quantities as will prevent plaintiff from diverting from said river into plaintiff's canal system for use upon said lands the water appropriated by it as herein found up to twelve (12) cubic feet flow per second, measured at the intake of plaintiff's said canal system, or so much thereof as shall be necessary for the proper irrigation of said lands;

"That whenever the normal flow of said river at defendant's dam is less than twelve (12) second feet, the defendant shall not be required to permit any water to pass over its dam. The defendant shall have the option of allowing the waters hereinbefore mentioned to pass down the river, or it may deliver the same into the canal of the plaintiff or at the intake of plaintiff's said canal."

Subsequent to the 1922 decree the Gila Water Company allowed the water to flow to the Gila Land & Cattle Company's diversion point by way of the natural river bed. In 1925, however, a system of carriage was adopted, using the canal of the water company instead of the river bed. This system was modified from time to time until it reached a point of development known as the "present system".

The present system was developed in 1944 after Narramore had succeeded the cattle company and Gillespie had succeeded the water company. It operates as follows: the waters of both parties are taken into the Gillespie Canal at the point of their stoppage at Gillespie Dam, and are carried from that point through the Gillespie lands, and then so much of the water as Narramore is entitled to is diverted from the Gillespie Canal into a wash whence the waters make their way into the Narramore ditch.

In 1955, Narramore filed a petition for a supplemental decree and the appointment of a water commissioner. Thereafter Enterprise Ranch was joined as an additional party for the reason that the rights of Enterprise were senior to those of Gillespie and concurrent with those of Narramore and because all of the appropriations had Gillespie Dam as the point of diversion. The petition alleged that Narramore was not receiving the waters to which he was entitled under the 1922 decree, and invoked the traditional power of equity to entertain supplemental proceedings in the enforcement of a decree having prospective application. The petition prayed for the appointment of a permanent water commissioner to carry out the former decrees.

In answer the Gila River Ranch, Inc. (having now succeeded Gillespie) sought to invoke the power of equity to relieve a litigant from the prospective application of a decree when it is no longer equitable because of vastly changed circumstances. Such circumstances allegedly being that the surface flow of the Gila River as it existed at the time of the original decree had so deteriorated that the normal flow consisted only of drainage from other upstream irrigation and that such drain water was of such quality due to chemical salts that it was no longer "irrigation water" but constituted a hazard to lands upon which it might be placed, and further, that the continued enforcement of the decree would

therefore compel appellant to place the toxic water upon its own land, there being no other practicable means of transporting its own well water to its land than the canal system, and no means of removing or separating the toxic waters from the pump waters, or from the canal, after they had been admitted.

From the foregoing it can be clearly seen that the sole issue of fact in the case was based upon the present quality and quantity of the waters of the Gila River. It is undisputed that upstream activities of the river and a general drought cycle have contributed to lessen the flow of waters of the Gila River and to increase the saline content thereof. There is evidence to the effect that during periods of low flow almost all of the water in the river comes from tail or waste waters which have been diverted back by the Arlington and Buckeye Irrigation Districts.

It is during this period of low flow that the saline content of the water becomes critical. A great deal of evidence along this line was produced, including testimony and reports of Samuel F. Turner. Turner has had long experience studying the flow and changing conditions of the Gila River. A number of studies and analyses supplied by the United States Government bearing upon this problem were introduced into evidence. Expert testimony of John Erickson and others was adduced to the effect that the content of salt and other chemicals

in the water reaches a point where it becomes critical. As Erickson testified:

"A. I think the water at seven to eight tons per acre foot, there is a very high hazard in that water and should not be used.

"Q. When you add to that the fact that it is 65 per cent sodium chloride, in your opinion would that be classified irrigation water at all? A. No, it is what some of us call irrigation sewage."

Erickson further testified on cross-examination:

"Q. Mr. Erickson, you mentioned, I believe, yesterday that there were studies being continuously made of how irrigation water with high soluble solids in them can be used and there is some difference of opinion on them? A. Yes, sir, that is true, the science is being advanced as much as we can all the time."

Turner, in answer to a question along the same line, testified:

"Q. Now, Mr. Turner, I will ask you if you don't agree with this statement, 'It is very difficult to fix exact toxic limitation for any chemicals found in irrigation water because all the other chemicals in the water influence the soil, the plant and each other,' Do you agree with that? A. Correct."

Both the experts testified that they had no practical experience in farming and that the true test is to actually grow crops because there are many different factors that enter into the matter. There was no testimony that the raising of crops on appellants' land was affected by the use of this water. There was testimony from other witnesses as to their practical experience in growing crops in the immediate area. One witness, the manager of the Enterprise Ranch, testified that using a major part of water from the Gillespie Dam during the year 1955 he grew a cotton crop of two bales to the acre which he considered a good crop and that he did not think that there had been any trouble in growing crops on the Enterprise Ranch on account of bad water, that is, "no more than taking care of it".

The court specifically found that the upstream activities since 1922 had materially increased the saline content of the waters of the Gila River but appellants had not sustained the burden of proof that the salinity of such water would injure and damage their lands so that the raising of crops would be materially affected and concluded that they were not entitled to be relieved of the obligation to carry and supply such water to appellees. The court granted leave to appellants to reopen for the purpose of showing damages from the use of such water, but they did not avail themselves of this opportunity. The supplemental decree determined that appellees were entitled to the enforcement of the 1922 decree.

The appellant sets forth eight assignments of error. The assignments, except numbers five and seven are all based upon a determination by this Court of the sufficiency of the evidence to support the findings of the trial court and as to whether the trial court "abused its discretion in making findings of fact and conclusions of law on entering its decree without giving regard to the equities of all the parties and in violation of the principle of equity to the effect that equity will not do inequitable harm to one in order to preserve a prior right in another, but will balance the equities of the parties in accordance with the least injurious solution available".

■ There is no question that while a decree of a court of equity is res judicata as to the circumstances which existed at the time of the making of the decree, a court of original jurisdiction has inherent power to enforce, and when deemed necessary, to modify a decree as to its prospective application and to relieve a litigant of the effect of such a decree, where, because of subsequent changed circumstances, its application is no longer equitable.

"The power of the court to enforce and make effective its orders of injunction * * * continues for all time. As a correlative, there must also exist the

power to * * * modify or vacate as exigencies arising since its rendition may require." Lowe v. Prospect Hill Cemetery Ass'n, 75 Neb. 85, 106 N.W. 429, 108 N.W. 978.

The court does have jurisdiction in the event it deems some action is necessary in the light of all the facts and circumstances existing at the time of the filing of the petition for modification. In order to modify the decree, however, the evidence must be clear. The appellants based their case primarily on an effort to convince the trial court that the decree should be modified to allow them "to refuse to receive any flow of the Gila River into its canal when the salt or mineral content thereof is in excess of two thousand parts per million, or such acceptable salt percentage as shall be determined by the court as satisfactory".

It was upon this question of fact as to the change in circumstances in the quality and quantity of the flow of the Gila River that the trial court determined there was not sufficient evidence. It is upon review of this question of fact that this appeal must stand or fall.

After an examination of the entire record before us, this Court is of the opinion that the evidence presented is conflicting; that there is sufficient evidence to support the findings of the trial court; and that it did not abuse its discretion in reaching the decision. It has been stated on numerous occasions by the court and specifically in Anderson v. Artesia Inv. Co., 66 Ariz. 335, 338, 188 P.2d 455, 457; and again in Sturges v. Tongeland, 83 Ariz. 148, 317 P. 2d 941 that:

"* * * In considering questions of this nature we have repeatedly laid down the following rules, that where the evidence is in conflict, we will not substitute our opinion thereof for that of the trial court (citing cases); that evidence will be taken in the strongest manner in favor of the appellee and in support of the court's findings (citing cases); and that a judgment will not be disturbed when there is any reasonable evidence to support it (citing cases)."

This is true even though the weight of the evidence be against that finding, Kauffroath v. Wilbur, 66 Ariz. 152, 185 P.2d 522, and cases cited therein.

The appellants' assignment of error number five deals with the appropriation of the water from the Gila River. We do not agree with their contention in this regard. It must be remembered that the Gila River Ranch, Inc., is the junior appropriator. The evidence is clear that the Enterprise Ranch is entitled to ten second feet of water and the Narramores are entitled to twelve second feet of water before any appropriation on the part of the Gila River Ranch, Inc. The decree of 1957 merely provides a method of carrying into effect the decree

of 1922. The Court in its determination of this matter specifically retained jurisdiction to protect the rights of all parties, and if there is any further question on this subject, the water commissioner by and through the trial court has jurisdiction to decide it.

Appellants present and argue to this Court that appellees do not have a license to run their water as the senior appropriator through appellants' canal. The decree of the lower court was obviously based upon the failure of appellants to prove the necessity for an abandonment of the present system and, having failed, any discussion as to a license is accordingly unnecessary for a determination of this appeal.

In their assignment of error number seven the appellants contend that the action of the trial court was contrary to the Constitution of Arizona in that the same constitutes the taking of private property without just compensation, and that the same is contrary to the Constitution of the State of Arizona and of the United States in that the action denying the appellants the relief prayed for constitutes deprivation of property without due process of law. This presupposes, however, that the evidence is uncontradicted and that the water in its present flow is unfit for irrigation and would, in fact, cause irreparable damage to the lands of the appellant. In view of the fact that we have sustained the findings of the trial court in this regard the contention is without merit.

Judgment affirmed.

UDALL, V. C. J., STRUCKMEYER and LOCKWOOD, JJ., and ROSS F. JONES, Superior Court Judge, concur.

NOTE. The Honorable CHARLES C. BERNSTEIN and RENZ L. JENNINGS being disqualified, the Honorable T. J. MAHONEY and ROSS F. JONES were called to sit in their stead.