GEORGE WASSERBURGER ET AL., APPELLEES, V. BILL B. COFFEE ET AL., APPELLANTS, GERTRUDE QUINTARD ET AL., INTERVENERS-APPELLEES.

267 N. W. 2d 760

Filed July 19, 1978. No. 41588.

Van Steenberg, Brower, Chaloupka, Mullin & Holyoke, for appellants.

Nichols, Meister & Winner, for appellees.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, CLINTON, BRODKEY, and WHITE, JJ.

McCOWN, J.

The defendants filed an application to vacate or modify a permanent injunction previously entered against them enjoining them from diverting more of the flow of certain streams than would allow a constant flow of water in sufficient quantity for domestic use and the watering of cattle on certain riparian lands of the plaintiffs. The plaintiffs answered praying that defendants' application be denied and that defendants be found to be in contempt for willful failure to comply with the permanent injunction. The District Court denied the defendants' application to vacate the permanent injunction; found that one of the defendants was in contempt of court for willful failure to comply with the provisions of the injunction; and taxed the costs of the action, including an attorney's fee, to that defendant. The defendants have appealed.

The injunction involved here was originally entered by the District Court for Sioux County, Nebraska, in 1965. Except for modifications immaterial here, this court affirmed the action of the District Court in granting the injunction in Wasserburger v. Coffee, 180 Neb. 149, 141 N. W. 2d 738. The factual situation out of which this water rights controversy arises is set out in detail in that opinion. Briefly summarized, the plaintiffs are the owners of lower riparian lands located along the waters of certain creeks and their tributaries which flow generally northerly in Sioux County, Nebraska, meandering

along a course of some 60 miles to the South Dakota border. The defendants are holders of appropriative water rights on the upper portions of the streams who were diverting water for irrigation purposes. The natural flow of the streams is insufficient to meet the appropriative water rights held by the defendants without depriving plaintiffs of water necessary for domestic use and the watering of cattle.

On February 1, 1965, the District Court permanently enjoined the defendants from diverting more of the flow of the streams than would allow to plaintiffs a constant flow of water in sufficient quantity for domestic use and the watering of cattle and other livestock in the numbers normally pastured on plaintiffs' riparian land. Following the mandate of this court, the District Court, on April 24, 1967, identified the riparian lands entitled to the benefits of the 1965 injunction.

On November 30, 1974, the defendants commenced this proceeding to vacate the permanent injunction. Defendants alleged that the construction of various water pipelines since the entry of the injunction had given plaintiffs an additional adequate source of water other than the stream flow, and that this fact changed the balance of the equities and justified the lifting of the injunction.

A water pipeline known as the Montrose Line was completed in 1969. The water line was constructed under a government program, and 75 percent of the cost was paid by the government and 25 percent was paid by the landowners on the line. The line is of plastic pipe of varying dimensions, buried 5 feet beneath the surface. It extends over a 30-mile route, and serves all but one of the plaintiffs.

The defendants' evidence tended to prove that the pipeline was a new and dependable source of adequate water. The pipeline is capable of carrying approximately 30 gallons of water per minute but the two wells which currently supply the line are only

producing 16 gallons a minute. The plaintiffs' evidence tended to show that the pipeline was inadequate and undependable. The lines broke down from time to time because of line breaks or equipment or electrical failure, and even without any line breaks, persons on the end of the line were often without water because of the production limit of the wells. Other pipeline users had similar complaints of outages. The farther plaintiffs were from the beginning of the pipeline, the more frequent and long-lasting were their outages. An expert witness for the plaintiffs testified as to the geological conditions underlying the area and the difficulty of predicting the reliability of the wells feeding the pipelines. He testified that the Montrose Line would be an unreliable source of water.

There was also considerable evidence presented as to the procedure which had been in use for the enforcement of the original injunction. Following the entry of the injunction, by agreement between counsel, the use of water was placed under the supervision of the Department of Water Resources of the State of Nebraska. The procedure used was that whenever a plaintiff downstream riparian owner was out of water, he would call the engineer of the Department of Water Resources in the area, the engineer would verify the fact, and would then send notices to each of the defendant appropriators ordering them to shut down. Orders were usually sent on the day a water shortage was verified but were normally not made effective for a day or two in order to allow time for closing down. Orders to shut down went to all upstream appropriators on the affected streams, even to nondefendants. The evidence indicated that after a close down order became effective it could take from 10 days to 2 weeks for the water to begin flowing again in the streams through plaintiffs' lands. There was also evidence that because the creek bed was clay, each time it dried out it re-

quired a large amount of water to recharge the stream bed before water would flow past and on downstream. Expert testimony was that the procedure used was ineffective, that the most efficient use of the existing water would require a continuous flow in the stream, and that methods were available which would be much more efficient in maintaining a constant flow of the stream.

The evidence also established that several of the defendants had been in violation of closing orders of the Department of Water Resources from time to time, but the degree of regularity and magnitude of the violations was not sufficient for the court to find that the violations constituted a willful failure to comply with the injunction. The evidence, however, established violations of closing orders by the defendant, Bill B. Coffee, on numerous occasions and in substantial amounts over a period of 5 years.

The District Court found the pipelines and wells constructed by the plaintiffs were not sufficiently reliable to guarantee a supply of water for watering the livestock of the plaintiffs on the riparian lands; that with the exception of the arrangements between counsel and the Department of Water Resources, the defendants have not made a good faith effort to comply with the injunction; that the injunction was capable of enforcement; and that a good faith attempt to comply with the injunction by the defendants would be successful. The court also found that the defendant, Bill B. Coffee, had, beyond a reasonable doubt, willfully failed to comply with the injunction with respect to specified violations of closing orders. The District Court therefore denied the application of the defendants for vacation or dissolution of the injunction; found the defendant, Bill B. Coffee, to be in contempt of court for willful failure to comply with the provisions of the injunction; and taxed the costs of the action, including an attorney's fee for the plaintiffs, to Bill B. Coffee.

In cases involving permanent injunctions this court has consistently held that when a question in controversy has been once finally decided it becomes the law of the case and is binding on the parties in all subsequent stages of the litigation. When the circumstances and situation of the parties have changed so that it would be just and equitable to vacate or modify a permanent injunction, the court which granted the injunction may vacate or modify it upon motion. Board of County Commissioners v. Scott, 178 Neb. 53, 131 N. W. 2d 711; Lowe v. Prospect Hill Cemetery Assn., 75 Neb. 85, 106 N. W. 429, affirmed on rehearing, 75 Neb. 100, 108 N. W. 978.

In the Lowe case this court also held that where a defendant seeks the vacation of a permanent injunction allowed after a trial in a civil action, the burden is on him to show that the threatened injury has been certainly overcome, not that it possibly may be.

There is no contention in the case now before us that there has been any material change in the water rights law of Nebraska applicable to this case since the injunction here was entered. Defendants' claim of right to vacation of the permanent injunction rests upon the construction and existence of water pipelines since the entry of the injunction. The defendants clearly have the burden of proving that the pipelines give plaintiffs an additional adequate reliable source of water other than the stream flow, and that such a changed circumstance justifies vacating the injunction.

The trial court specifically found that the pipelines and wells constructed by the plaintiffs are not sufficiently reliable to guarantee a supply of water for watering the livestock of the plaintiffs on the riparian lands. The evidence is persuasive that that factual finding is correct. The evidence is also clear that even with the pipelines in operation, there is still not enough stream water at times to meet the

needs of both plaintiffs and defendants. On an appeal from a judgment in equity when credible evidence on material questions of fact is in conflict, the Supreme Court will consider the fact that the trial court observed the witnesses and their manner of testifying and accepted one version of the facts rather than the other. Marfisi v. Spagnola, 197 Neb. 211, 248 N. W. 2d 24.

The defendant Coffee contends that the evidence was insufficient to establish that any violations of closing orders by him were willful. The District Court found that although defendants had not made a good faith effort to comply with the injunction, the agreement for the delivery of water under the supervision of the Department of Water Resources foreclosed any consideration of contempt for acts other than violations of specific closing orders issued by the Department of Water Resources. It is apparent that the direct violation of specific closing orders without reason or explanation was willful. The evidence established eight separate violations of closing orders by the defendant, Bill B. Coffee, in substantial amounts and extending over a period of 5 years. The evidence supports the finding of the District Court.

The judgment of the District Court was correct and is affirmed.

AFFIRMED.