FRANK NESTOR LATENSER AND RUTH M. LATENSER, APPELLEES, V. THE INTERCESSORS OF THE LAMB, INC., APPELLANT.

553 N.W.2d 458

Filed September 27, 1996.   No. S-94-854.

Monte Taylor, of Taylor, Connolly & Kluver, for appellant.

H. Daniel Smith, of Sherrets Smith & Gardner, for appellees.

WHITE, C.J., CAPORALE, FAHRNBRUCH, LANPHIER, WRIGHT, CONNOLLY, and GERRARD, JJ.

GERRARD, J.

The Intercessors of the Lamb, Inc. (Intercessors), appeals from a district court order denying its motion for modification of an injunction. The injunction was imposed due to the Intercessors' use of its property in violation of certain restrictive covenants. On the motion to modify the injunction, the district court found that no significant change had occurred since imposition of the injunction which would warrant modification. We reverse, and remand with directions to vacate the injunction previously entered, as we find a significant change in circumstances has occurred such that the Intercessors is now in compliance with the restrictive covenants.

## FACTUAL BACKGROUND

The Intercessors is a Catholic religious order formed as a nonprofit corporation holding tax-exempt status. The organization was founded by Sister Nadine Brown, and its mission is intercessory prayer—i.e., to teach people how to listen and

discern the will of God and to pray according to that will. In 1987, the order began the process of securing formal status as a canonical organization within the Roman Catholic Church.

Sister Nadine described the Intercessors as a mixed group of Christians, including priests, laity, and religious hermits, dedicated to prayer. At the time of the hearing on the motion to modify the injunction, the group consisted of four sisters, five brothers, and a priest, all devoted to the full-time work of the organization, and between 30 and 40 laity from several parishes in and around Omaha who participated in weekly meetings on the Intercessors' property.

Parcel A, the property at issue in the instant case, was purchased by the Intercessors in 1985. Parcel A consists of $7^1/2$ acres of land in the Ponca Hills area of Omaha on which is located a large house, known as the big house. Prior to the purchase of parcel A, the Intercessors acquired another plot of land, parcel F, consisting of $11^1/2$ acres on which is located a house known as the round house. Between the big house and the round house is parcel D, an undeveloped 5-acre tract also owned by the Intercessors. Parcels F and D are not at issue in this case.

Four of the brothers, the priest, and three sisters reside in the big house. Sister Nadine resides in the round house, and one brother lives in the garage associated with the round house. The big house contains a chapel which can accommodate as many as 50 worshipers. Prior to the issuance of the injunction, the big house was used to conduct seminars and workshops concerning prayer. These events usually involved between 20 and 30 participants. Prior to the injunction, the lay members of the Intercessors held their weekly meeting at the big house. At present, this group now meets in the round house.

Parcel A is subject to restrictive covenants which limit its use to, in pertinent part, a single-family dwelling, a church, or accessory building and uses customarily incident to an approved use. However, the covenants do not define what constitutes a single-family dwelling or a church, or the meaning of uses customarily incident to an approved use.

In 1991, the Intercessors announced plans to build a chapel on its undeveloped tract, parcel D. The appellees, Frank Nestor Latenser and Ruth M. Latenser, are adjoining landowners to parcel D. The Latensers sought to enjoin the Intercessors from constructing its chapel by filing suit in the district court. Among the causes of action brought was one alleging that the use of parcel A was in violation of the restrictive covenants. Both parties filed motions for partial summary judgment with respect to this cause of action.

In August 1992, the district court granted summary judgment in favor of the Latensers, finding that the property was not being used as a church or single-family dwelling within the meaning of the covenants. Accordingly, the district court issued an injunction prohibiting such use of the property by the Intercessors. An appeal was taken from this order; however, due to an incomplete bill of exceptions, we affirmed the judgment of the district court as the only issue before us was whether the pleadings were sufficient to support the judgment. *Latenser v. Intercessors of the Lamb, Inc.*, 245 Neb. 337, 513 N.W.2d 281 (1994).

On September 29, 1992, the Intercessors became an officially recognized organization within the Catholic Church. In May 1994, the Intercessors filed a motion to modify the original injunction. In this motion, the Intercessors assert that the dominant consideration of the district court for issuance of the injunction was that the Intercessors was not a church within the meaning of the restrictive covenants. Thus, reasons the Intercessors, official acceptance into the Catholic Church is a significant change in a controlling fact, and that the organization now qualifies as a "church" within the meaning of the restrictive covenants warrants dissolution of the injunction. The district court denied the motion to modify on August 12, 1994, finding no change in the use of the property in question. In the words of the district court, "[T]he paramount factor is not the organization of the user, but the use to which the property is put that determines whether the use is consonant with the covenants."

## ASSIGNMENTS OF ERROR

The Intercessors assigns that the district court erred in (1) finding there was no change in a controlling fact upon which the earlier injunction was based, (2) ruling that the Intercessors is not a church within the meaning of the restrictive covenants, and (3) failing to strictly construe the restrictive covenants at issue against any limitations on use.

## STANDARD OF REVIEW

An action for injunction sounds in equity. *Ben Simon's, Inc. v. Lincoln Joint-Venture*, 248 Neb. 465, 535 N.W.2d 712 (1995); *University Place-Lincoln Assocs. v. Nelsen*, 247 Neb. 761, 530 N.W.2d 241 (1995). In equity actions, an appellate court reviews the factual findings de novo on the record and reaches a conclusion independent of the findings of the trial court. *Friehe v. Schaad*, 249 Neb. 825, 545 N.W.2d 740 (1996); *Ben Simon's, Inc. v. Lincoln Joint-Venture, supra*.

## ANALYSIS

Important to our analysis is the posture of the matter before us. Under the law-of-the-case doctrine, the holdings of the appellate court on questions presented to it in reviewing proceedings of the trial court become the law of the case; those holdings conclusively settle, for purposes of that litigation, all matters ruled upon, either expressly or by necessary implication. *Pendleton v. Pendleton*, 247 Neb. 66, 525 N.W.2d 22 (1994); *Wicker v. Vogel*, 246 Neb. 601, 521 N.W.2d 907 (1994). As a result, matters previously addressed in an appellate court are not reconsidered unless the petitioner presents materially and substantially different facts. *Pendleton v. Pendleton, supra*; *McKinstry v. County of Cass*, 241 Neb. 444, 488 N.W.2d 552 (1992). However, when the circumstances and situation of the parties have changed so that it would be just and equitable to vacate or modify a permanent injunction, the court which granted the injunction may vacate or modify it upon motion. *Wasserburger v. Coffee*, 201 Neb. 416, 267 N.W.2d 760 (1978).

Accordingly, we express no view concerning the propriety of the issuance of the injunction by the district court. Instead, the law-of-the-case doctrine requires that we presume the ini-

tial injunction to be proper; thus, we confine our analysis to whether there has been a change in circumstances of the parties such that modification of the injunction is now warranted. Therefore, the issue before us devolves into whether there has been a change of circumstances such that the use of parcel A by the Intercessors constitutes that of a church or that of an accessory building or a use customarily incident to a church within the meaning of the restrictive covenants.

Restrictive covenants are to be construed so as to give effect to the intentions of the parties at the time they agreed to the covenants. *Boyles v. Hausmann*, 246 Neb. 181, 517 N.W.2d 610 (1994). On the other hand, the law disfavors covenants that restrict the use of land. *Boyles v. Hausmann, supra*; *Egan v. Catholic Bishop*, 219 Neb. 365, 363 N.W.2d 380 (1985); *Knudtson v. Trainor*, 216 Neb. 653, 345 N.W.2d 4 (1984).

In its order issuing the injunction, the district court provided the parties a very thorough explanation of its reasoning. The court found that in 1952, when the covenants were drafted, the intent of the drafter was to limit the residential use of the neighborhood to only single-family dwellings. Those other uses permitted by the covenants were ones which did not include permanent residents and thus did not interfere with the drafter's original intent. Continuing, the court recognized that the Intercessors was a religious organization; however, a religious organization is not necessarily a church. Instead, the court found that the Intercessors was a religious organization connected in some loose manner to the Catholic Church and that the big house on parcel A was being used as a facility to house unrelated persons who were learning to become members of the Intercessors' organization. Thus, the court concluded that the use was not a residential use intended by the drafter of the covenants.

The court identified 10 factual findings which allowed it to conclude that the Intercessors and its use of the big house were not within those uses permitted by the covenants. Those findings were that (1) the Intercessors did not have rules, regulations, or discipline; (2) there was no priest assigned to the Intercessors; (3) there was no regular public mass or worship on the grounds; (4) for the most part, the residents attended

their own parishes for mass; (5) the grounds are not open to the public for mass and other related church activities on a regular basis; (6) the Intercessors has no parish lines or jurisdictional limits; (7) the Intercessors' name does not include the word "church"; (8) the Internal Revenue Service recognizes the Intercessors as an educational organization and not as a church; (9) the Catholic Church does not ordain females as priests; and (10) the Intercessors does not have any official recognition within the hierarchical governmental structure of the Catholic Church.

The burden is on the party seeking modification of a permanent injunction to show a change in circumstance or situation sufficient to warrant such modification. See *Wasserburger v. Coffee*, 201 Neb. 416, 267 N.W.2d 760 (1978). We conclude that the Intercessors has met this burden.

At the hearing on the motion to modify the injunction, Sister Nadine testified that unlike before, the Intercessors now has a full-time priest residing on its premises. In addition, this has allowed the Intercessors to now schedule and conduct mass on a daily basis. Sister Nadine testified that even when the priest is not in town, there are many priests from the community who fill in for him and conduct mass when needed. Accordingly, the district court's original findings that no priest was assigned to the group, that no regular worship was conducted on the grounds, and that the residents must attend mass elsewhere have been obviated.

Sister Nadine testified that the Intercessors' door is always open to the public. However, since its mission is contemplative prayer, in order to keep noise to a minimum, the big house is not a public facility where anyone may come and go as he or she pleases. Instead, Catholics as well as non-Catholics may call for appointments and are welcome to use the facilities on that basis. Thus, the district court's original finding that the Intercessors' facility is not open to the public is now moot.

Finally, Sister Nadine testified that the Intercessors is now officially recognized as an organization within the Catholic Church. A letter dated September 29, 1992, from the

Archbishop of Omaha was received in evidence. The letter recites in part:

> With this letter, I hereby canonically establish the Association of Hermit Intercessors of the Lamb. In accord with Canon 305, this Community is hereby officially established, and remains subject to the vigilance of the Archdiocesan Bishop who is given this responsibility in the 1983 Code of Canon Law.

In addition, Sister Nadine testified that part of this recognition process included having statutes drafted by a canon lawyer and approved by the Church. In his letter officially recognizing the Intercessors, the archbishop expressly approved the statutes. Thus, the district court's original findings that the Intercessors is not governed by specific rules or regulations and that the group is not recognized by the Catholic Church are also moot.

Accordingly, we conclude that a substantial change of circumstance and situation of the parties has occurred sufficient to warrant modification of the injunction. Thus, the only question remaining is whether this change of circumstances now allows the Intercessors' use to be considered that of a church or a use incident to a church within the meaning of the covenants.

The restrictive covenants at issue do not define the word "church" or what constitutes a use incident to a church. However, we find this to be of no moment, as the covenant at issue is unambiguous. If the language of a covenant is unambiguous, the covenant shall be enforced according to its plain language and shall not be subject to rules of interpretation or construction. *Boyles v. Hausmann*, 246 Neb. 181, 517 N.W.2d 610 (1994). The plain, ordinary, and popular meaning of the word "church" would indicate a building where Christians gather to worship God. " ' "But if the obvious must be supported by authority or judicial precedent, we find that they are of the same view." ' " *Knudtson v. Trainor*, 216 Neb. 653, 656, 345 N.W.2d 4, 6 (1984).

A church is "a building set apart for public esp. Christian worship." Webster's Third New International Dictionary, Unabridged 404 (1993). Citing other authorities, this court has

found the plain, ordinary, and popular meaning of the word "church" includes a building in which people assemble for the worship of God and for the administration of such offices and services as pertain to that worship, a building consecrated to the honor of God and religion, and a place where persons regularly assemble for worship. *Calvary Baptist Church v. Coonrad*, 163 Neb. 25, 77 N.W.2d 821 (1956). Obviously, a building consecrated to the honor of a religion would likewise include buildings in which people assemble for non-Christian worship, such as a mosque, a synagogue, or a temple.

Further support is found in more recent cases from other jurisdictions. The Supreme Court of Hawaii found the use of a two-story residence and smaller buildings on the premises qualified as a church within the meaning of a zoning ordinance, when the use of the buildings included daily religious ceremonies, prayers, lectures, and a public feast held each Sunday. *Marsland v. International Society for Krishna Consciousness*, 66 Haw. 119, 657 P.2d 1035 (1983).

In *Daughters of St. Paul, Inc. v. Zoning Board of Appeals*, 17 Conn. App. 53, 549 A.2d 1076 (1988), construction of a convent and chapel in conjunction with a religious book and audiovisual center was held to constitute a use as a church within the meaning of the applicable zoning restriction. The court reasoned that a chapel open to the public during the weekdays and on Saturday, used by the nuns for prayer on a daily basis and for mass on Sunday, compelled the conclusion that the convent and chapel constitute a church. Moreover, this conclusion was not compromised by the existence of the book and audiovisual center, as the dominant use of the facility remained in support of the Roman Catholic faith.

We conclude that the use by the Intercessors, as a recognized organization within the Catholic Church having a priest assigned to it living on its grounds and holding daily religious services open to the public, is, under any definition, a use consistent with the plain, ordinary, and popular meaning of a church or use incident to a church.

## JUDGMENT

Accordingly, we hold that the Intercessors has demonstrated the existence of a substantial change of circumstances which warrants modification of the injunction. The use of parcel A as it stands today qualifies as that of a church or as a use incidental thereto within the meaning of the restrictive covenants at issue. Thus, the Intercessors is no longer in violation of the restrictive covenants. Therefore, the order of the district court denying the motion to modify the injunction is reversed, and this matter is remanded with directions to vacate the injunction previously imposed therein.

REVERSED AND REMANDED WITH DIRECTIONS.