230 Md. 450 (1963)
187 A.2d 685
TIDEWATER EXPRESS LINES, INC.
v.
FREIGHT DRIVERS AND HELPERS LOCAL UNION NO. 557
[No. 139, September Term, 1962.]
Court of Appeals of Maryland.
Decided January 29, 1963.
The cause was argued before BRUNE, C.J., and HAMMOND, PRESCOTT, MARBURY and SYBERT, JJ.
James H. Doherty, with whom was H.B. Mutter on the brief, for appellant.
*451 Bernard W. Rubenstein, with whom was Jacob J. Edelman on the brief, for appellee.
HAMMOND, J., delivered the opinion of the Court.
This is an appeal by Tidewater Express Lines, Inc., an employer, whose bill of complaint against a union, Freight Drivers & Helpers Local Union No. 557, to enjoin continuance of a strike of its employees, who were members of the Union, and for damages caused by the strike in alleged breach of a collective bargaining agreement not to do so, was dismissed without leave to amend after the sustaining of the Union's demurrer which alleged that the court had no jurisdiction because of the Maryland statute, Code (1957), Art. 100, Sec. 65 (a), proscribing the issuance of injunctions in labor disputes, and because the strike was not in breach of any contract between the parties and was therefore lawful and permissible.
Tidewater's bill alleged (a) that it is an intrastate motor freight carrier, the employees of which are represented by the defendant; (b) that Tidewater and the Union entered into a collective bargaining agreement to continue in force and effect from August 31, 1958, to August 31, 1961, which provided that:
"If changes to any of the provisions herein are desired by either party hereto after August 31, 1961, then said party shall notify the other that such changes are desired by giving not less than sixty days' written notice prior to August 31, 1961. Failing such notice, this Agreement shall automatically renew itself and continue in full force and effect until 6 P.M., August 31, 1962."
(c) that on June 14, 1961, Tidewater received a letter from the Union stating:
"Written notice is hereby given of our desire to change, amend, and revise the terms and conditions of the said agreement expiring on August 31, 1961. We will contact you in the near future in order to *452 make arrangements to begin negotiations. At the present time we are preparing a proposal to submit to you."
(d) that no agreement has been reached by Tidewater and the Union, and that on November 17, 1961, Tidewater wrote the Union that the contract had, by its terms, automatically renewed itself and that the contract was in full force and effect; (e) that the contract provides that there shall be no cessation of normal work by either party except for failure or refusal of the opposite party to comply with the agreement, and that, "Any such cessation shall constitute a wilful violation of this Agreement"; and (f) that on March 19, 1962, prior to the filing of the bill, the employees of Tidewater, "acting under the direct orders and instructions" of the Union "engaged in a concerted refusal to work" in direct violation of the terms of the agreement, to the irreparable harm of Tidewater.
The prayers of the bill were for a temporary order enjoining the Union and its members from striking pending final adjudication of the subsequent prayers for a declaration that the collective bargaining agreement continued in full force and effect until August 31, 1962, and a monetary decree for $100,000 as damages for the loss and damage suffered by Tidewater because of the breach of the agreement.
Judge Cullen sustained the demurrer on the ground that the notice given by the Union of its desire for a change in the terms of the agreement, more than sixty days prior to its stated expiration date of August 31, 1961, brought about the end of the contract on the latter date, and thereafter the Union was free to strike.
We think the case is controlled by the Maryland anti-labor injunction statute, Code (1957), Art. 100, Sec. 65, which provides in pertinent parts:
"No court, nor any judge or judges thereof shall have jurisdiction to issue any restraining order or temporary or permanent injunction which in specific or general terms prohibits any person or persons from *453 doing whether singly or in concert, any of the following acts:
"(a) Ceasing or refusing to perform any work or to remain in any relation of employment regardless of any promise, undertaking, contract or agreement to do such work or to remain in such employment:
* * *
"(g) Assembling peaceably to or to organize any of the acts heretofore specified;
* * *
"(i) Agreement as to acts.  Agreeing with other persons to do or not to do any of the acts heretofore specified;
"(j) Advising, urging, or inducing without fraud, violence, or threat thereof, others to do the acts heretofore specified, regardless of any such undertaking or promise as is described in Sec. 64 of this article; and
"(k) Doing in concert of any or all of these acts heretofore specified on the ground that the persons engaged therein constitute an unlawful combination or conspiracy."
The language of the statute is clear and unambiguous and in terms prohibits the enjoining of the doing of the things the Union and its members are charged with doing. There is no claim that fraud or violence or threat of either has raised its ugly head. There would seem to be no room for any finding other than that the Maryland Legislature had taken away the power of the court to issue the injunction sought.
Tidewater seeks to escape the bind in which the statute puts it by asserting that its proscriptions do not apply where employees violate a promise in an existing collective bargaining agreement not to strike, and that the agreement between it and the Union was in force when the strike began (by reason of its automatic renewal). We shall assume the latter premise for the purpose of the consideration and disposition of the contention.
Tidewater relies on a line of New York cases holding generally *454 that a strike in breach of an existing no-strike clause is enjoinable.[1]
Other New York courts, however, have held that a labor dispute does not lose its character as such merely because it occurs in violation of a collective bargaining agreement.[2]
The Court in Stewart Stamping Corp. v. Uprichard, 133 N.Y.S.2d 579, 581 (Sup. Ct. 1954), aff'd 134 N.Y.S.2d 392 (App. Div. 1954), attempted a reconciliation of the conflicting decisions by saying that in the group denying injunctive relief the strikes arose from some cause outside the contract or from a cause "clearly within the definition of a `labor dispute.'" We do not attempt to evaluate the validity of the distinction. The New York act is definitely less restrictive on the power of the courts than the Maryland act.[3] It prohibits an injunction "in any case involving or growing out of a labor dispute as hereinafter defined * * *." A labor dispute is defined, in effect, as one in which an employee ceases or refuses "to perform any work or to remain in any relation of employment." The Maryland act adds, immediately after the quoted language the words "regardless of any promise, undertaking, contract or agreement to do such work or remain in such employment." The reasoning of the New York cases permitting injunctions where a strike occurs during the life *455 of a collective bargaining agreement would not seem properly applicable to the language of the Maryland act, and, in any event, we do not find those decisions persuasive.
The other State Courts that have permitted injunctions for breach of an existing labor agreement are, generally, either in States which have no anti-injunction statute[4] or where, as in Minnesota and Pennsylvania, there is express statutory exemption of breaches of collective bargaining agreements from the coverage of the anti-injunction statutes.[5]
The Superior Court of New Jersey (Appellate Division), in Commercial Can Corp. v. Local 810, Steel Metal, Alloys and Hardware Fabricators and Warehousemen, International Brotherhood of Teamsters, 160 A.2d 855, a thorough opinion in which the State and Federal authorities and the writers and law reviews are scanned and carefully evaluated, decided that a strike contrary to the terms of a labor contract was a labor dispute which could not be enjoined under the New Jersey statute forbidding injunctions in cases of labor disputes.
The Federal Courts have consistently adhered to this view in interpreting the directive to them not to issue injunctions in labor disputes set out in the Norris LaGuardia Act, 47 Stat. 70 (1932), 29 U.S.C. Secs. 101-115.[6]
We conclude that the Maryland anti-injunction act left no jurisdiction in the Circuit Court No. 2 of Baltimore City to *456 issue the injunction prayed for. We realize that the case, as far as the injunction was concerned, was moot when it came to us for decision because by then the contract, even if it had been automatically extended to August 31, 1962, had expired; and Tidewater concedes that if a strike occurred without a contract, it could not be enjoined under Sec. 65 of Art. 100 of the Code. We decide the question of jurisdiction because of the prayers of Tidewater's bill, asking for a declaration of the status of the contract and money damages for its breach.
We take the view that the only relief asked which would appropriately support the jurisdiction of equity was the praying of an injunction. Since the court clearly lacked jurisdiction and power to grant this relief, the bill was, in effect, an effort to obtain damages for breach of contract. The fact that a declaration that the contract had been breached was asked would not, of itself, give jurisdiction to equity. Bachman v. Lembach, 192 Md. 35, 43. Code (1957), Art. 31A, Sec. 1, provides that "Courts of record within their respective jurisdictions shall have power to declare rights, status and other legal relations * * *." The relief sought, other than the injunction, was essentially legal and should have been sought in a court of law, where a specific declaration, if desired, would be as available as in equity. Glorius v. Watkins, 203 Md. 546. See also Porcelain Enamel, etc. v. Jeffrey Mfg. Co., 177 Md. 677, and compare Dormay Corp. v. Doric Co., 221 Md. 145.
For the reasons stated, the order appealed from, sustaining the demurrer without leave to amend, will be affirmed, without prejudice to the appellant to seek relief in a court of law.
Order affirmed, with costs.
NOTES
[1] Uneeda Credit Clothing Stores, Inc. v. Briskin, 14 N.Y.S.2d 964 (Sup. Ct. 1939); J.I. Hass Co., Inc. v. McNamara, 21 N.Y.S.2d 441 (Sup. Ct. 1940); Republic Aviation Corp. v. Republic Lodge No. 1987, 169 N.Y.S.2d 651 (Sup. Ct. 1957); McLean Trucking Company v. Doyle, 184 N.Y.S.2d 114 (Sup. Ct. 1959), aff'd 188 N.Y.S.2d 943 (1959); Dalzell Towing Co. v. United Marine Division, 108 N.Y.S.2d 912 (App. Div. 1951); Stewart Stamping Corp. v. Uprichard, 133 N.Y.S.2d 579 (Sup. Ct. 1954), aff'd 134 N.Y.S.2d 392 (App. Div. 1954); and Anchor Motor Freight N.Y. Corp. v. Local Union No. 445, 171 N.Y.S.2d 506 (Sup. Ct. 1958), aff'd 171 N.Y.S.2d 511 (App. Div. 1958).
[2] Bert Manufacturing Company v. Local 810, etc., 136 N.Y.S.2d 805, 808 (Sup. Ct. 1954); Green Bus Lines v. Flynn, 61 N.Y.S.2d 663 (Sup. Ct. 1945); Holland Laundry, Inc. v. Lindquist, 16 N.Y.S.2d 140, 141 (Sup. Ct. 1939); De Neri v. Gene Louis, Inc., 25 N.Y.S.2d 463 (App. Div. 1941); A.H. Bull Steamship Co. v. Hall, 169 N.Y.S.2d 775, 776-777 (Sup. Ct. 1957).
[3] New York Civil Practice Act, Sec. 876-a.
[4] California and Ohio are examples. See McCarroll v. Los Angeles County D.C. of C. (Cal.), 315 P.2d 322, and General Electric Co. v. International Union, etc. (Ohio), 108 N.E.2d 211, aff'd 110 N.E.2d 424.
[5] Minnesota Statutes Annotated, Sec. 179.11 (1); 43 Pennsylvania Statutes, Sec. 206 d.
[6] Alcoa S.S. Co., Inc. v. McMahon, 81 F. Supp. 541 (D.C.S.D. N.Y.), aff'd 173 F.2d 567, 568, cert. den. 338 U.S. 821, 94 L.Ed. 498; A.H. Bull S.S. Co. v. Seafarers' International Union, 250 F.2d 326, 328 (2d Cir.); Local 205 United Electrical, Radio & Machine Workers of America v. General Electric Company, 233 F.2d 85, 90 (1st Cir.), aff'd 353 U.S. 547, 1 L.Ed.2d 1028; Sinclair Refining Company v. Atkinson, 290 F.2d 312, 319, et seq.; cf. Farrand Optical Co. v. Local 475, etc., 143 F. Supp. 527. And see Annotations in 29 A.L.R.2d 323, 356, et seq.; 156 A.L.R. 652, 678, et seq.