PRUCHA, ET AL. *v.* WEISS, ET AL.

[No. 181, September Term, 1963.]

480

*Decided February 6, 1964.*

*Motion to amend order and mandate filed February 18, 1964, denied March 12, 1964.*

The cause was argued before BRUNE, C. J., and HENDERSON. PRESCOTT, HORNEY and SYBERT, JJ.

*Clayton A. Dietrich* for appellants.

*Carl H. Lehmann, Jr.,* for appellees.

HORNEY, J., delivered the opinion of the Court.

The plaintiffs-appellants (Clement J. Prucha and Thomas H. Ward) filed a bill in equity against the defendants-appellees (Harold M. Weiss, the Downtown Civic Association, Inc., and National Photo Press, Inc.) seeking injunctive relief and damages for alleged past and prospective false and malicious preelection statements published and to be published by the appellees against the appellants. Each of the appellees demurred and the chancellor sustained the demurrers on the ground that the court lacked jurisdiction. This appeal is from the judgment for costs entered on the orders sustaining the demurrers.

The appellants and another person were seeking nomination by the Democratic Party in the municipal primary election, to be held in Baltimore City on March 5, 1963, for three seats in the City Council allocated to the Second Legislative and Councilmanic District. Their candidacies were endorsed by an established political faction known as the Regular Second District Democratic Organization. Three other candidates for the nomination were endorsed by the Downtown Civic Association (Downtown Association), a political faction organized and controlled by Weiss. Over a period of years, the Downtown Association had irregularly published a political tabloid known as the "Downtown News" ("News"), delivered primarily within the Second Councilmanic District, which in January 1963 commenced publishing articles supporting the candidates endorsed by the Downtown Association for the three seats in the City Council. On February 23, 1963, the "News" contained a headline stating that "POLLACK SUPPORTS PRUCHA AND WARD" and supporting explanatory articles. In one article, referring to one of the candidates, it was stated that "we will explain in full in a later issue." This edition of the "News" also noted that there would be a "special edition" before the election.

Two days later the appellants filed suit against the appellees

and the candidates they were supporting, praying for compensatory and punitive damages and an *ex parte,* a *pendente lite* and a permanent injunction to restrain the appellees from further libel. Attached to the bill was the proposed *ex parte* injunction which would have required the appellees to present to the appellants forty-eight hours in advance of distribution a copy of any newspaper to be published by them prior to March 7, 1963. There were also provisions for dissolution of the *ex parte* injunction upon twenty-four hours notice and for automatic termination on March 7th. The chancellor declined to sign the *ex parte* injunction but did sign a show cause order which was promptly served on the appellees. Although the demurrers were filed promptly, they were not heard and disposed of until after the election.

On appeal the appellants contend that they were denied their constitutional right to due process and equal protection of the law by the State of Maryland (through the act of one of its courts) in refusing to grant a limited and temporary *ex parte* injunction to restrict and restrain the publication of anticipated untruthful statements concerning the appellants and that a court of equity has the power to issue an injunction to restrain the publication of libelous statements.

In addition to filing a brief, the appellees moved to dismiss the appeal because the questions presented concern the refusal of injunctive relief only, but we deem it proper to decide the appeal on the merits rather than dismiss it.

Inasmuch as the election has long since been held, it is clear that the case is moot on the questions posed by the refusal of the chancellor to issue the *ex parte* injunction. See *Lloyd v. Bd. of Supervisors of Elections,* 206 Md. 36, 111 A. 2d 379 (1954). Cf. *Freedman v. Seidler,* 233 Md. 39, 194 A. 2d 778 (1963) ; *Tolman Laundry v. Walker,* 171 Md. 7, 187 Atl. 836 (1936). However, since the bill also sought compensatory and punitive damages for the alleged false and malicious statements published in the February 23rd edition of the "News," it is appropriate to decide whether the case should be remanded for a determination of whether there was a libel and if so the amount of damages arising therefrom. Of course, no punitive damages

may be awarded by a court of equity. *Superior Construction Co. v. Elmo,* 204 Md. 1, 14, 104 A. 2d 581 (1954).

Ordinarily a person who is aggrieved by an alleged libelous publication will institute an action at law for compensatory damages and, in case there is actual or express malice, for punitive or exemplary damages. Protection against defamation, such as libel, has not been one of the traditional areas of equity jurisdiction. Consequently it is generally held that in the absence of independent grounds of equitable jurisdiction, equity lacks power to issue an injunction restraining the publication of defamatory matter. See *4 Pomeroy's Equity Jurisprudence,* § 1358 (5th ed.) ; Newell, *Slander and Libel,* § 265 (3rd ed.). The primary reasons for the reluctance of equity to extend its jurisdiction so as to grant injunctive relief in cases of libel, a personal action, seems to be the traditional limitation of equitable jurisdiction to the protection of property rights, and the fear that to grant such relief would violate the constitutional rights of freedom of speech and press and trial by jury. See the annotation, "Injunction as remedy against defamation of person," 47 A.L.R. 2d 715. Although this Court has not heretofore had to consider the power of equity to enjoin a continuing or threatened libel, we have consistently recognized and enforced the constitutional guarantees of freedom of speech and press and had occasion to say in *Negley v. Farrow,* 60 Md. 158, 176 (1883), that:

> "The liberty of press guaranteed by the Constitution is a right belonging to every one, whether proprietor of a newspaper or not, to publish whatever he pleases, without the license, interference or control of the government, being responsible alone for the abuse of the privilege."

We agree with the prevailing concept in other jurisdictions that a person allegedly injured by a libelous publication has no right to seek injunctive relief in equity. He has an adequate remedy at law for damages. Moreover, under the Maryland Rules of Procedure, he may claim an injunction as ancillary relief in an action at law. See Rules BF40-BF43, particularly the latter,

wherein it is provided that "the court shall apply the same tests and standards as would be applied in an action in equity."

The appellants further contend that even though libel is a law action, the jurisdiction of equity is not ousted when there exists a ground on which relief in equity may be invoked. The short answer to this contention is that the only relief sought which would appropriately support the jurisdiction of equity was the prayer for the injunction and, inasmuch as the lower court clearly lacked jurisdiction and power to grant injunctive relief, the bill was in effect an effort to obtain damages for an alleged libel in a court of equity. See *Tidewater Express Lines, Inc. v. Freight Drivers,* 230 Md. 450, 187 A. 2d 685 (1963). There were no independent grounds of equitable jurisdiction. Cf. *Nagel v. Todd,* 185 Md. 512, 45 A. 2d 326 (1946); *Dormay Corp. v. Doric Co.,* 221 Md. 145, 156 A. 2d 632 (1959). Nor were any property rights involved which would justify a retention of jurisdiction. Cf. *Hanley v. Stulman,* 212 Md. 273, 129 A. 2d 132 (1957); *Leekley v. Dewing,* 217 Md. 54, 141 A. 2d 696 (1958). Moreover, the only relief asked for, aside from the injunctions, was essentially compensation for an alleged personal injury which should have been sought in a court of law by an action of libel for damages, with or without a "claim for injunction."

Even if it is assumed that the lower court has jurisdiction to hear this case on the merits, it would seem that the allegations of the bill are insufficient to support an action of libel. While no definition of the term "libel" is sufficiently comprehensive to embrace all cases, it has been said that libel "includes any unprivileged * * * false and malicious publication which by printing, writing, signs or pictures tends to expose a person to public scorn, hatred, contempt or ridicule." *Thompson v. Upton,* 218 Md. 433, 437, 146 A. 2d 880, 883 (1958). For a statement to be libelous, it is necessary to show that the words used were not only untrue and injurious, but that they were concerned with and injurious to the character and integrity of the one complaining. *Foley v. Hoffman,* 188 Md. 273, 52 A. 2d 476 (1947). See Newell, *op. cit.,* §§ 30, 31. It is clear that neither the headline, "POLLACK SUPPORTS PRUCHA

AND WARD," nor the supporting and adjoining articles,[1] were libelous *per se* since the words on their face were not defamatory to the appellants. See Prosser, *Law of Torts,* § 93 (2nd ed.). The mere fact that it was said that a politician who is the subject of much adverse criticism was endorsing the candidacies of the appellants, even though such statement might hinder their chances of success, does not necessarily convey an imputation detrimentally affecting the personal character and integrity of the appellants. Nor do the so-called *colloquium* and *innuendo* [2] establish libel *per quod* since the extrinsic evidence contained therein is insufficient to create a defamatory meaning which could be imputed to the appellants. Many candidates for public office are openly supported by persons of ill repute whose advocacy of their candidacies often do more harm than good.

With these holdings (a) that the question posed by the non-issuance of the injunction is moot, and (b) that equity lacks power to enjoin a continuing or threatened libel, it is unnecessary to consider further the appellants' contention that they were denied their constitutional rights to due process and equal protection of the laws by the refusal of the chancellor to issue the *ex parte* injunction. And, since the lower court lacked jurisdiction to hear this case on the merits, the rulings of the chancellor on the demurrers will be affirmed.

> *Judgment for costs affirmed; the appellants to pay the costs of appeal.*

---

**1.** The supporting article stated that: "In the Second District: Pollack is supporting Clem Prucha and Tom Ward for City Council, and whoever these two take for Mayor."

An adjoining article on the front page stated that Weiss: "Was told by Mr. Pollack in the presence of witnesses that Mr. Pollack was backing Prucha and Ward in the Second District for the City Council and that he intended to spend some money for their campaign."

**2.** The appellants argue that they deliberately particularized each material allegation of the bill to serve, among other things, the role of *colloquium* and *innuendo*.