J. Q. OFFICE EQUIPMENT OF OMAHA, INC., A NEBRASKA CORPORATION, APPELLEE AND CROSS-APPELLANT, V. MORT D. SULLIVAN AND MORT ASSOCIATES, LTD., APPELLANTS AND CROSS-APPELLEES.

432 N.W.2d 211

Filed November 23, 1988.   No. 86-1068.

Dennis L. Wills for appellants.

Paul R. Stultz, of Martin & Martin, for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, and GRANT, JJ., and COLWELL, D.J., Retired.

WHITE, J.

Appellants, Mort D. Sullivan and Mort Associates, Ltd., appeal from a Douglas County District Court order enjoining them from issuing any telephone or telecommunications messages or any unsolicited communications concerning the appellee, J. Q. Office Equipment of Omaha, Inc. The appellee cross-appeals the district court's award of $456.54 in damages for services rendered by appellee to appellant Mort Associates.

In December of 1984, Mort Associates purchased a Ricoh photocopying machine from appellee, which at that time was the authorized dealer for Ricoh in Omaha. The purchase

included a 90-day warranty for parts and labor. Between January 23 and August 1, 1985, Sullivan, president and sole shareholder of Mort Associates, experienced numerous difficulties with the copier and requested appellee to service the machine.

The record shows that appellee provided Mort Associates with paper products, which were not included under the warranty, and made several service calls after the warranty period had expired. Invoices for these items, which were never paid for by Mort Associates, totaled $865.42.

On August 1, 1985, appellee's service technician informed Sullivan that a drum located in the interior of the copier was damaged and replacement was necessary. Sullivan, believing that the damage to the drum was caused by a service technician on a prior visit, requested that it be replaced at the expense of the appellee. When appellee refused to replace the drum at its expense, Sullivan told appellee that he had access to automatic telephone dialing machines and that he would use the machines to make public his belief concerning the damage to the copier. The evidence shows that the dialing machines had the capability of making 6,000 calls a day, though the record is not specific on how many calls the machines actually made when Sullivan turned them on.

Colin Hurley, a 16-year-old area resident and the recipient of a phone call from an automatic dialing machine, testified that the machine played the following message: "I am Mort Sullivan and I am a businessman. I just recently purchased a Ricoh copier from Joe Quirk [of J. Q. Office Equipment]. This machine broke down. I think they are the worst copiers, repeat, the worst copiers and I advise you not to purchase one." The record also reflects that Sullivan had used similar methods to induce settlement of disputes with a Ford dealership and a John Deere tractor dealership.

In September of 1985, appellee learned that Sullivan had made plans to attend an exhibitors' show for office equipment in Omaha and publicize his dispute with the appellee. Sullivan's plan was to "congest the area" around appellee's booth with 15 friends equipped with bullhorns that also played the "Go Big Red" theme, and to have them broadcast a message that Ricoh

copiers were bad machines and not to buy them from J. Q. Office Equipment. Appellee then filed suit in the district court requesting an injunction be issued against appellants and praying for $865.42 in damages for services rendered. The court, without citing any reason, awarded $456.54 in damages. The court also issued an injunction enjoining appellants from "instigating, promoting, or in any manner issuing derogatory messages concerning the plaintiff or plaintiff's merchandise by any other automatic device, or by bullhorn, or any other loud or disruptive device."

Appellants assign two errors. First, the issuance of the injunction by the district court was an unconstitutional prior restraint of the appellants' right of freedom of speech guaranteed by the first amendment to the U.S. Constitution and by art. I, § 5, of the Nebraska Constitution. Second, the appellee failed to establish at trial that it had no adequate remedy at law. We vacate the district court's injunction on constitutional grounds and therefore do not address the appellants' second assignment of error. We also note that neither party raises the possible applicability of Neb. Rev. Stat. §§ 87-307 to 87-311 (Reissue 1987), regulating automatic dialing machines, and therefore limit our discussion to constitutional issues.

A prior restraint is not per se unconstitutional, but there is a "heavy presumption" against its constitutional validity. *Southeastern Promotions, Ltd. v. Conrad*, 420 U.S. 546, 95 S. Ct. 1239, 43 L. Ed. 2d 448 (1975); *Organization for a Better Austin v. Keefe*, 402 U.S. 415, 91 S. Ct. 1575, 29 L. Ed. 2d 1 (1971). The U.S. Supreme Court has not set out a test to determine the validity of prior restraints. Rather, to be lawful a prior restraint must fit within one of the narrowly defined exceptions to the prohibition against prior restraints. *Southeastern Promotions, Ltd. v. Conrad, supra.* Those exceptions include speech or activity not protected under the first amendment and expressions that would impact "military security" such that disclosure would " 'surely result in direct, immediate, and irreparable damage to our Nation or its people' " or " 'inevitably, directly, and immediately cause the occurrence of an event kindred to imperiling the safety of a

transport already at sea . . . '." (Emphasis omitted.) *Nebraska Press Assn. v. Stuart*, 427 U.S. 539, 593, 96 S. Ct. 2791, 49 L. Ed. 2d 683 (1976) (Brennan, J., concurring).

Other exceptions recognized by the courts are that the restraint is reasonably incidental to the achievement of another valid governmental purpose and that the activity restrained poses a serious and imminent threat to some protected competing public interest or will irreparably damage a private interest. *Rodgers v. United States Steel Corp.*, 536 F.2d 1001 (3d Cir. 1976); *CBS Inc. v. Young*, 522 F.2d 234 (6th Cir. 1975); *K. D. v. Educational Testing Service*, 87 Misc. 2d 657, 386 N.Y.S.2d 747 (1976). Justice Brennan further noted that as a matter of procedural safeguards and burden of proof, prior restraints, even within a recognized exception to the rule against prior restraints, will be extremely difficult to justify. *Nebraska Press Assn. v. Stuart, supra.*

In the case at bar there is no evidence in the record establishing the existence of a recognized exception. However, appellee, in its brief, argues that the speech enjoined was "commercial speech" and therefore not subject to the full protection of the first amendment and the narrow rules relating to prior restraints and the attendant exceptions. Appellee is correct in that content-based restrictions on commercial speech are permissible, *Posadas de Puerto Rico Assoc. v. Tourism Co.*, 478 U.S. 328, 106 S. Ct. 2968, 92 L. Ed. 2d 266 (1986), and *Bolger v. Youngs Drug Products Corp.*, 463 U.S. 60, 103 S. Ct. 2875, 77 L. Ed. 2d 469 (1983), but here the speech enjoined is not commercial speech. The U.S. Supreme Court has defined commercial speech as expression which is related solely to the economic interests of the speaker and the audience or speech which does no more than propose a commercial transaction. *Posadas de Puerto Rico Assoc. v. Tourism Co., supra*; *Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n*, 447 U.S. 557, 100 S. Ct. 2343, 65 L. Ed. 2d 341 (1980).

Sullivan's message is not a solicitation for the sale or purchase of a product or service, nor is the message a mere advertisement, since it is not being published for profit. See *Matter of Nat. Service Corp.*, 742 F.2d 859 (5th Cir. 1984). Sullivan's message is not related to a commercial transaction,

but is the communication of an opinion or the propagation of a view, i.e., "I think they are . . . the worst copiers and I advise you not to purchase one," and therefore falls under the full protection of the first amendment and the prohibition against prior restraints. *State v. Monastero*, 228 Neb. 818, 424 N.W.2d 837 (1988).

Finally, appellee argues that Sullivan's speech is "designed to coerce and blackmail appellee" into settlement of the dispute and is therefore not protected under the Constitution. Brief for appellee at 11. Protection of coercive speech under the first amendment has been addressed by the U.S. Supreme Court. In *Organization for a Better Austin v. Keefe*, 402 U.S. 415, 91 S. Ct. 1575, 29 L. Ed. 2d 1 (1971), respondent, a real estate broker, tried to enjoin the petitioners from distributing leaflets critical of respondent's real estate practices. For example, some leaflets contained alleged quotes by the respondent such as "I only sell to Negroes." 402 U.S. at 417. Other leaflets contained respondent's home phone number and urged recipients to call respondent and demand he sign an agreement not to solicit property by phone, flyer, or visit in the community. The Court stated:

> The claim that the expressions were intended to exercise a coercive impact on respondent does not remove them from the reach of the First Amendment. Petitioners plainly intended to influence respondent's conduct by their activities; this is not fundamentally different from the function of a newspaper. [Citations omitted.] Petitioners were engaged openly and vigorously in making the public aware of respondent's real estate practices. Those practices were offensive to them, as the views and practices of petitioners are no doubt offensive to others. But so long as the means are peaceful, the communication need not meet standards of acceptability.
>
> . . . No prior decisions support the claim that the interest of an individual in being free from public criticism of his business practices . . . warrants use of the injunctive power of a court.

402 U.S. at 419. Accordingly, the injunction issued by the Douglas County District Court is vacated.

Addressing appellee's cross-appeal for damages, we note that even though there was no contract, appellee is entitled to receive reasonable market value for goods and services provided to appellants. *Senften v. Church of the Nazarene*, 214 Neb. 708, 335 N.W.2d 753 (1983). At trial appellee put on testimony and introduced evidence showing that appellant Mort Associates owed appellee $865.42 for goods and services provided which were not covered by warranty. Appellants offered no evidence at all with respect to the amount of money due. The court, in awarding appellee only $456.54, did not explain why appellee's claim was not allowed in full. We believe the district court's determination is incorrect based on the evidence in the record, and therefore modify the court's award to $865.42.

AFFIRMED IN PART AS MODIFIED,
AND IN PART REVERSED.

BOSLAUGH, J., concurring.

I concur in the judgment of the court but on a different ground.

Injunction is an extraordinary remedy available in the absence of an adequate remedy at law and where there is a real and imminent danger of irreparable injury. *Grein v. Board of Education*, 216 Neb. 158, 343 N.W.2d 718 (1984).

The purpose of an injunction is preventive, protective, and prohibitory. It will not issue against discontinued acts unless there are probable grounds to believe there will be a resumption of the activity to be enjoined. *Johnson v. NM Farms Bartlett*, 226 Neb. 680, 414 N.W.2d 256 (1987).

The motivation for the defendant's threatened activities, some of which were carried out, was to force a settlement of a claim he or his corporation had relating to an alleged defective copying machine that had been purchased from the plaintiff. After the action had been commenced, but before the trial on the merits in the district court, the defendant completed a settlement with the manufacturer of the copying machine.

The evidence shows that all of the threats and telephone calls which the defendant made were made before the settlement took place. As I view the record, it fails to show probable grounds to believe that the defendant will resume the activities

which the plaintiff sought to enjoin. As in *Stuthman v. Lippert*, 205 Neb. 302, 287 N.W.2d 80 (1980), the alleged activities have ceased and are not likely to be resumed. For that reason, that part of the judgment of the district court granting the injunction should be reversed.

HASTINGS, C.J., and GRANT, J., join in this concurrence.