BEN SIMON'S, INC., A NEBRASKA CORPORATION, APPELLANT, V. LINCOLN JOINT–VENTURE, AN OHIO GENERAL PARTNERSHIP, AND GENERAL MILLS RESTAURANTS, INC., A FLORIDA CORPORATION, APPELLEES.

535 N.W.2d 712

Filed August 11, 1995. No. S–93–1014.

Richard L. Spangler, Jr., Robert B. Evnen, and David A. Hecker, of Woods & Aitken Law Firm, for appellant.

William G. Blake, of Pierson, Fitchett, Hunzeker, Blake & Loftis, for appellee Lincoln Joint-Venture.

Robert T. Grimit, of Baylor, Evnen, Curtiss, Grimit & Witt, for appellee General Mills.

WHITE, C.J., CAPORALE, FAHRNBRUCH, LANPHIER, WRIGHT, and CONNOLLY, JJ.

WHITE, C.J.

Ben Simon's, Inc. (Simon's), filed an action seeking an injunction against Lincoln Joint-Venture (LJV) and General Mills Restaurants, Inc. (GMRI), prohibiting them from constructing a restaurant in a parking area that Simon's contended was restricted under its lease agreement with LJV. The Lancaster County District Court denied Simon's request. Simon's appealed to this court seeking a mandatory injunction to raze the subsequently constructed restaurant. We dismiss.

The record contains the following facts: In 1959, Simon's and the Lincoln Gateway Shopping Center (Gateway) entered into a lease agreement. Approximately 15 years later, the parties amended the lease.

A portion of the amended lease, the second supplemental agreement, states that the "[l]andlord further agrees that it will not, without the written approval of [Simon's], construct any new buildings or additions to existing buildings in that area . . . labeled as [the] 'permanent parking area'." The parties attached a drawing of the parking area. The second supplemental agreement also required the landlord to maintain a parking ratio of 5.5 parking spaces for each 1,000 square feet of gross leasable area at Gateway. Simon's did not record the second supplemental agreement.

In 1974, at the same time the parties entered into the second supplemental agreement, Reuben's restaurant existed within the area subject to the approval clause. Thereafter, during the 1980's, new occupants twice remodeled the Reuben's building without Simon's approval.

In 1985, LJV purchased Gateway. In February 1993, LJV entered into a lease with GMRI granting the latter permission to construct a new restaurant on the same "pad site" as the

Reuben's building. Under the lease, GMRI agreed to demolish the Reuben's building and construct a new restaurant, the Olive Garden, that would not eliminate any existing parking areas.

In April 1993, Simon's informed LJV that Simon's did not feel the expansion plans for the Reuben's building complied with its lease. LJV responded by stating that the new restaurant fit within the pad site of the old Reuben's building and that LJV intended to increase the number of available parking spaces in the area. However, LJV did not ask for Simon's approval of the new construction until June 1993. On July 12, 1993, Simon's filed this suit to enjoin the construction of the Olive Garden, alleging that the construction violated the second supplemental lease agreement.

At trial, Simon's contended that the Olive Garden, although constructed on the same pad site as the Reuben's building, could hold more people and therefore would use the parking spaces intended for Simon's customers. LJV argued that there would be more parking spaces available to Simon's customers as a result of a concurrent parking expansion project. GMRI argued that it had no knowledge of the second supplemental agreement because Simon's did not record the agreement; furthermore, GMRI had incurred substantial costs in preparing to build the Olive Garden.

The district court refused to enjoin LJV and GMRI from constructing a new restaurant on the old pad site. Subsequently, GMRI built the Olive Garden. Simon's now asks this court to grant a mandatory injunction to raze the Olive Garden because Simon's contends there is a parking deficit of 68 spaces at Gateway.

Simon's assigned six errors, which may be consolidated into five. Simon's contends that the district court erred (1) in concluding that Simon's did not sustain its burden of proof that construction of the Olive Garden constituted a breach of Simon's lease with LJV, (2) in concluding that Simon's had to establish irreparable harm, (3) in concluding that Simon's lease with LJV did not entitle Simon's to exercise sole discretion concerning GMRI's building request, (4) in concluding that Simon's withheld approval of GMRI's building request unreasonably and without good faith, and (5) in excluding

certain testimony relating to the good faith and commercial reasonableness of Simon's decision to withhold its approval of GMRI's building request.

An action for injunction sounds in equity. *University Place–Lincoln Assocs. v. Nelsen*, 247 Neb. 761, 530 N.W.2d 241 (1995); *Nebraska Irrigation, Inc. v. Koch*, 246 Neb. 856, 523 N.W.2d 676 (1994); *CAE Vanguard, Inc. v. Newman*, 246 Neb. 334, 518 N.W.2d 652 (1994). In equity actions, an appellate court reviews the factual findings de novo on the record and reaches a conclusion independent of the findings of the trial court. *Blue Tee ·Corp. v. CDI Contractors, Inc.*, 247 Neb. 397, 529 N.W.2d 16 (1995); *Synacek v. Omaha Cold Storage*, 247 Neb. 244, 526 N.W.2d 91 (1995); *Duggan v. Beermann*, 245 Neb. 907, 515 N.W.2d 788 (1994). An appellate court has an obligation to reach its own independent conclusions as to questions of law. *State v. Skalberg*, 247 Neb. 150, 526 N.W.2d 67 (1995); *State v. Roche, Inc.*, 246 Neb. 568, 520 N.W.2d 539 (1994); *Welch v. Welch*, 246 Neb. 435, 519 N.W.2d 262 (1994).

Simon's seeks a restoration of the status quo before construction. We decline to order LJV and GMRI to raze the Olive Garden. This is because of the nature of the remedy sought by Simon's. An injunction is an extraordinary remedy and ordinarily should not be granted except in a clear case where there is actual and substantial injury. Such a remedy should not be granted unless the right is clear, the damage is irreparable, and the remedy at law is inadequate to prevent a failure of justice. *Nebraska Irrigation, Inc., supra.* We agree with the trial court that irreparable damage entitling Simon's to the mandatory razing has not been shown. Indeed, we accept the view that rather than making less parking available, the plan increased available parking. Nor should we be inclined in equity to enforce a construction restriction against a third party having no knowledge of the restriction.

At oral argument, Simon's counsel specifically asked this court only for a mandatory injunction to raze the Olive Garden and did not request monetary damages. Simon's neither requested monetary relief nor proved damages in any amount arising from the construction of the Olive Garden or the alleged

parking deficiency at Gateway. Under Nebraska law, while damages need not be proved with mathematical certainty, they cannot be established by speculation or conjecture. *Lone Cedar Ranches v. Jandebeur*, 246 Neb. 769, 523 N.W.2d 364 (1994). Without proof, any damages associated with the construction of the Olive Garden or the alleged parking deficiency at Gateway are speculative and uncertain as to amount. Furthermore, the complete failure to prove any monetary damages provides no reasonably certain factual basis for computation of the loss, and consequently there is uncertainty as to the fact of whether damages were sustained at all; the absence of such a record is fatal to recovery. See *id.*

Absent a request for monetary damages, Simon's contention that it will not be made whole without an order granting a mandatory injunction is an argument for specific performance of its lease agreement with LJV. Even assuming that Simon's suffers from a 68-space parking deficit at Gateway, equity disallows the requested remedy when it is too extreme. Specific performance of a contract will not be granted where enforcement of the contract would be unjust. *Wallroff v. Dougherty*, 212 Neb. 178, 322 N.W.2d 392 (1982).

AFFIRMED.